IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

United States of America, :

    Plaintiff, : Case No. 2:13-mj-129

  v. :

James H. Spencer, : Magistrate Judge Kemp

    Defendant. :

OPINION AND ORDER

The defendant, James H. Spencer, has been charged in a criminal complaint with violating 18 U.S.C. §2422(b). The Court held a preliminary hearing on the complaint on May 14, 2013. This order constitutes the Court's finding on the issue of probable cause.

I.

Preliminary hearings are conducted under Rule 5.1 of the Federal Rules of Criminal Procedure. Rule 5.1(e) provides, in part, that "[i]f the magistrate judge finds probable cause to believe an offense has been committed and the defendant committed it, the magistrate judge must promptly require the defendant to appear for further proceedings."

"Neither the criminal procedural rules nor criminal code, however, define 'probable cause.' Case law establishes, however, that in the context of preliminary hearings, '[p]robable cause signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.' *Coleman v. Burnett*, 477 F.2d 1187, 1202 (C.A.D.C.1973) (citations omitted); *In re Szepietowski*, 2009 WL 187568, *4 (E.D.N.Y.2009)." *United States v. Infante*, 782 F.Supp.2d 815, 817 (D. Ariz. 2010). "In other words, the Court must simply decide whether the evidence permits a reasonable belief that the [defendant] committed the crime."

*In re Lam,* 2009 WL 1313242, *6 (E.D. Cal. May 12, 2009). "It is well established that the Government's burden to establish probable cause at this preliminary stage is relatively low." *United States v. Fontalvo*, 2008 WL 1994817, *1 (D.R.I. May 5, 2008). Finally, "all reasonable inferences must be drawn in favor of the prosecution at a preliminary hearing." *U.S. v. Fuentes*, 2012 WL 379589, *2 (S.D. Tex. January 19, 2012). These precepts are not in dispute here.

## II.

The facts of this case, although unusual, are straightforward. Defendant, James H. Spencer, fathered a child some 16 or 17 years ago. Apparently, they had little or no contact until 2012. That year, Mr. Spencer was being released from prison. Before that occurred, his daughter wrote to him, seeking to initiate some type of father-daughter relationship. There is no indication that she acted with any improper motive in doing so.

Once released, Mr. Spencer's daughter's mother took him into her home. Very shortly thereafter, the family took a trip to West Virginia to visit relatives. While there, Mr. Spencer's daughter told Mr. Spencer that she had developed a romantic interest in him. He admitted to having developed the same feelings, and they began a mutually consensual sexual relationship.

In September, 2012, Mr. Spencer was arrested on unrelated state charges. He was released from jail on September 24, 2012. While in jail, he wrote a letter to his daughter describing in fairly graphic detail how they would have sex once he arrived home. That letter was mailed, although it did not arrive at the family home until after Mr. Spencer got out of jail, and his daughter did not open or read it.

The day of his release, Mr. Spencer sent some text messages

to his daughter.  After an exchange of messages relating to Mr. Spencer's getting a ride home, he texted "Cant wait to make love to you."  His daughter responded "Me neither."  Later in the evening, Mr. Spencer sent a more graphic text describing a particular sex act.  Either late that day or the next day, the two met at a motel in Hilliard, Ohio, and resumed their sexual relationship.  However, the victim's mother and aunt then discovered the relationship and also took Mr. Spencer's letter to the Hilliard Police Department, where the victim explained what had occurred and that the relationship existed.

Based on these facts, a Homeland Security Agent swore out a complaint charging Mr. Spencer with violating 18 U.S.C. §2422(b), which provides that someone who uses a "facility or means of interstate commerce" such as the mails, the telephone, or the internet and, in doing so, "persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense" commits a federal crime.  The same statutory subsection also criminalizes the use of interstate commerce facilities as part of an attempt to persuade, induce, entice or coerce a minor into engaging in unlawful sexual activity.

Everyone seems to agree that Mr. Spencer was committing a state criminal act (sexual battery) by having sex with his biological daughter.  But he committed a federal criminal act only if any of his text messages, or his letter, either persuaded, induced, enticed or coerced her to have more sex with him, or attempted to persuade, induce, entice or coerce her to do that.  The legal question the Court must answer is what type of verbal communications about anticipated sexual relations constitute persuasion, inducement, or enticement: will any statement which says, in effect, "I'd like to (or intend to) have

-3-

sex with you again" be enough, or must there be more to it?  And there is a factual question as well, namely, if there is more required under this statute than just asking for sex or describing it, can any of Mr. Spencer's words be construed by a reasonable person as constituting that additional element?

III.

The Court begins its discussion with a brief review of the history of the statute under which Mr. Spencer has been charged. On June 25, 1910, Congress passed the law commonly referred to as the Mann Act.  It acquired that name because its author was Illinois Congressman James Robert Mann.  The statute was officially entitled the "White-slave traffic Act" and was adopted for the express purpose of regulating "interstate commerce and foreign commerce by prohibiting the transportation therein for immoral purposes of women and girls, and for other purposes." Section 3 of the Act stated:

> That any person who shall knowingly persuade, induce, entice, or coerce, or cause to be persuaded, induced, enticed, or coerced, or aid or assist in persuading, inducing, enticing or coercing any woman or girl to go from one place to another in interstate or foreign commerce, or in any Territory or the District of Columbia, for the purpose of prostitution or debauchery, or for any other immoral purpose, or with the intent and purpose on the part of such person that such woman or girl shall engage in the practice of prostitution or debauchery, or any other immoral practice, whether with or without her consent, and who shall thereby knowingly cause or aid or assist in causing such woman or girl to go and be carried or transported as a passenger upon the line or route of any common carrier or carriers in interstate or foreign commerce, or any Territory or the District of Columbia, shall be deemed guilty of a felony and on conviction thereof shall be punished by a fine of not more than five thousand dollars, or by imprisonment for a term not exceeding five years, or by both fine and imprisonment, in the discretion of the court.

In 1940, the Mann Act, which had been codified at 18 U.S.C. §399, became 18 U.S.C. §2422, and the language of Section 3 was repeated almost *verbatim*.

The statute has undergone several amendments since 1940. In 1986, Congress made the statute gender neutral and deleted any reference to debauchery or immoral purposes. However, the Act still reached only the transportation of individuals in interstate commerce for purposes of engaging in prostitution or other criminal sexual activity. In 1996, as part of the Telecommunications Act, Congress extended the scope of §2422, including, for the first time, the use of facilities of interstate commerce such as the mail to induce a minor to engage in criminal sexual activity. Two years later, it was amended again as part of a Congressional effort "to aggressively combat computer-related sex crimes against children." *United States v. Nestor*, 574 F.3d 159, 162 (3d Cir. 2009). The primary purpose of that amendment was to increase the penalty; the general wording of the statute did not change. The 1998 legislative history shows that when Congress enhanced the penalty for violating §2422(b), including adding a ten-year mandatory minimum sentence, it was concerned at least in part with ""pedophiles who stalk children on the Internet." H.R. Rep. No. 105-557, at 12 (1998). However, none of the relevant legislative history appears to shed any light on how to interpret the key wording of the statute, which dates back to 1910.

Counsel for both sides represented that there is no case law applying the statute to this fact pattern. True, this is a somewhat unusual fact pattern due to the relationship between Mr. Spencer and the victim. In fact, most prosecutions (or at least those reflected in reported cases) appear to deal with the situation where, as a result of some online activity such as a

chat room or a posting on a service like Craigslist, an adult attempts to locate a minor for purposes of engaging in sexual activity; often, there is no actual minor involved, but rather a law enforcement officer posing as a minor or a parent of a minor. Nevertheless, it is not all that unusual for a court to have to decide what type of conduct or speech qualifies as "persuading," "inducing," "enticing," or "coercing." Here is what some courts have said.

In *United States v. Joseph*, 542 F.3d 13 (2d Cir. 2008), the defendant visited an internet chat room and struck up an online conversation with someone he believed to be a 13-year-old girl. As the court stated, "[m]ost of the conversations were explicitly sexual and mentioned sexual acts that Joseph stated he would perform with" the fictional teenager and, ultimately, a second fictional thirteen-year-old. He agreed to meet one of them and was arrested at the arranged location. He denied any intention to have sex with the girl he thought he was meeting if she turned out to be a teenager.

The United States charged the defendant with violating §2422(b). The jury (which found the defendant guilty) was told that the words used in the statute were to be given their "common meaning." The trial judge then defined "persuade" as meaning "to move by argument or entreaty or expostulation to a belief, position, or course of action...." To "entice," the judge said, meant "to wrongfully solicit, persuade, procure, allure, attract, coax, or seduce, or to lure, induce, attempt, incite, or persuade a person to do a thing." The jury was also instructed that the government did not need to show that the defendant created or attempted to create the desire to engage in sexual activity where that desire never existed, but it did have to prove that he tried to "convince or influence" the fictional teenager to have sex with him. The trial judge added that enticement also included

making the possibility of having sex with the defendant more appealing.

The Court of Appeals found that last statement to be incorrect because it focused on the victim's mindset and not the intent of the defendant, drawing an admittedly fine distinction between whether the defendant intended to entice her to have sex with him and whether she concluded that to do so would be more appealing that she might first have thought, even though it was not his intent to influence her to engage in some sexual activity.  As the Court explained, "making a possibility more appealing can be evidence of enticement, but" merely doing so is not "a basis for conviction under either subsection of section 2422 in the absence of enticement."  *United States v. Joseph, supra*, at 17-19.   That court also cited with approval a decision from the Third Circuit Court of Appeals, *United States v. Tykarsky*, 446 F.3d 458, 473 (3d Cir.2006), which concluded that the verbs used in §2422(b) "have a plain and ordinary meaning that does not need further technical explanation."

A somewhat older case from the United States Court of Military Appeals  also attempted to define these words, but in the context of a section of the military Code of Conduct which prohibited enticing others to engage in intercourse with prostitutes.  The defendant had transported prostitutes to a military barracks and allowed them to conduct business in his car.  In finding that he had committed a violation of the Code, the court cited to Black's Law Dictionary, 4th Ed., 1951, page 626, for this definition of entice: "To wrongfully solicit, persuade, procure, allure, attract, draw by blandishment, coax or seduce.... To lure, induce, tempt, incite, or persuade a person to do a thing."  It also held that even without a verbal invitation, the act of bringing prostitutes onto a military base and "aiding in the dissemination of news concerning their

presence" was sufficiently enticing to young soldiers to qualify as "enticement." *Id*. at 258.

Both the dictionary definition and the jury instructions used in *Joseph* (which are virtually identical) are somewhat circular in that they define "entice" by using the word "persuade" although persuading is also one of the acts which violates the statute. But the *Joseph* court also defined "persuade" as involving some effort "to move by argument or entreaty or expostulation." That appears to be a definition taken from Webster's New Collegiate Dictionary. *See Master Printers of America v. Donovan*, 751 F.2d 700, 711 (4th Cir. 1984). A more common interpretation of the first two parts of this definition - argument or entreaty - would seem to be "coaxing," a word which contains an element of pushing someone, even gently, in a direction the person is reluctant to go. Further, in the context of what it means to persuade someone, the use of an "expostulation," which is simply an explanation of something usually accompanied by reasons that the hearer should credit the truth of what has been explained, also suggests a listener who is either opposed to the truth of what is being explained or is on the fence about it. *See also La Page v. United States,* 146 F.2d 536, 538 n.2 (8th Cir. 1945) (suggesting that persuasion by any means includes an element of inducing someone to believe or act in a certain way by winning over their reason and feelings). None of these definitions seem to fit the facts of Mr. Spencer's case. Coaxing is also part of the definition of "enticing," so if that and similar words like procure, induce, or incite are eliminated because each encompasses an element of attempting to push or influence someone to do or think something the person might not otherwise have done or thought, one is left with only words like "solicit" or "attract." In fact, counsel for the United States expressly

argued that the texts and the letter were solicitations for sex, and that such solicitations were enough to violate the statute.

There is support for the United States' argument in the case of *United States v. Hughes*, 632 F.3d 956, 961 (6th Cir. 2011). There, the Court of Appeals for this Circuit said (although in *dicta*) that "Section 2422(b), in other words, was designed to protect children from the act of solicitation itself ...." The statement is *dicta* because the defendant in that case did not argue that his conduct - proposing to meet a supposed 14-year-old girl in a park for purposes of having sex - was not enticement or persuasion, but rather that the mandatory ten-year minimum sentence for violating §2422(b) was unconstitutional, as evidenced by comparing that statute with §2423(b), which prohibits interstate travel for the purposes of having sex with a minor but which carries no mandatory minimum sentence. The Court of Appeals stressed that the statutes differ because §2423(b) "has no requirement that there be an element of enticement or coercion" and the two could not be directly compared because they addressed different types of conduct. *Id*.

In a different case, the Second Circuit Court of Appeals made this statement: "there may be some uncertainty as to the precise demarcation between 'persuading,' which is criminalized, and 'asking,' which is not ...." *United States v. Gagliardi*, 506 F.3d 140, 147 (2d Cir. 2007). In *Gagliardi*, as in *Joseph*, the court held that the various terms used in §2422(b) have generally understood and accepted meanings, and that they "are sufficiently definite that ordinary people using common sense could grasp the nature of the prohibited conduct." *Id*. The implication of this statement is that there are communications about sexual activity which are not prohibited by §2422(b), and that merely asking someone to have sex is one of them. This would seem to be inconsistent with the United States' argument here that merely

-9-

soliciting sex from someone when that sex would be illegal is covered by this statute.  In fact, the definition adopted by the decisions cited above uses the word "wrongfully" before the word "solicit" when explaining what enticement consists of.  Certainly, it could be argued that any solicitation of sex from someone that the solicitor cannot legally have sex with would be "wrongful," but if that argument were accepted, every solicitation covered by §2422(b) would be "wrongful" and therefore be enticement - a conclusion hard to reconcile with the notion that merely asking for sex which turns out to be illegal is not a federal crime.

All of these decisions seem to hold that "[t]he words 'entice' and 'induce' are not ambiguous or subject to varying standards ...."  *See United States v. Panfil*, 338 F.3d 1299, 1301 (11th Cir. 2003).  This Court does not necessarily agree with that conclusion.  There is plainly some ambiguity (although not of constitutional significance to the point of raising a vagueness problem) in what these terms mean, particularly as they relate to the element of encouraging someone to make a decision, or to take an action, that the person might otherwise not have done.  If the words are unambiguous, however, they necessarily contain that element.  If not, there is no difference between persuading or enticing, on the one hand, and asking, on the other.

Ordinary people understand what it means to ask, and how that is different from trying to persuade the listener to grant the request.  The following exchange serves to illustrate this point.  Speaker: "Would you like to ...?"  Listener: "No," or "I don't know."  Speaker: "Well, let me try to persuade you."  Such a dialogue appears to be consistent with the proper use of these terms, and points up the difference between merely asking and attempting to move the listener off a neutral position by

persuasion (or inducement or enticement).  The Court concludes that §2422(b) reaches the latter type of conduct but not the former.

So, the case boils down to this.  In his letter and his texts, did Mr. Spencer merely ask for, or express an interest in, sex, or did he attempt to persuade or entice his daughter to commit the acts he described to her?  Or, stated more precisely, could a reasonable person conclude on these facts that he attempted to persuade or entice her to do so?

The Court of Appeals for the Ninth Circuit, citing with approval decisions from several other Courts of Appeals, including *United States v. Bailey*, 228 F.3d 637 (6th Cir. 2000), has held that "when a defendant initiates conversation with a minor, describes the sexual acts that he would like to perform on the minor, and proposes a rendezvous to perform those acts, he has crossed the line toward persuading, inducing, enticing, or coercing a minor to engage in unlawful sexual activity." *United States v. Goetzke*, 494 F.3d 1231, 1237 (9th Cir. 2007).  Using that statement as a benchmark, the Court finds that a reasonable person might find that some of the words which Mr. Spencer used also "crossed the line."

What, exactly, did Mr. Spencer say in his texts and his letter?  In addition to telling his daughter in text messages that he could not wait to have sex with her again, he told her "Its gonna be the best ever" and to "call me."  *See* Amended Complaint, Doc. 3, ¶11.  In his letter, written from jail, after describing certain sex acts he wanted to engage in, he told her "we are gonna have so much fun when I come home."  *See* Government's Hearing Exh. 2.  One could argue, legitimately, that these are statements like the ones which the court in *United States v. Joseph*, 542 F.3d 13 (2d Cir. 2008) found not to violate the statute because they simply were intended to make the

-11-

prospect of future sex more appealing.  On the other hand, one could argue that they were intended to, and represented an attempt by Mr. Spencer to entice his daughter to continue or to resume their sexual relationship.  Given the stage of the case (that is, at the probable cause hearing) it is not necessary for the Court to determine if it would construe the words in that way, as long as at least one reasonable juror could do so.  That is a possibility; therefore, there is probable cause.

This is a difficult case, at least in part, because, based on the history of the statute and on the legislative history which does exist, there is no evidence that Congress was concerned with this type of conduct when it enacted and amended §2422(b).  It would be hard to argue that Mr. Spencer is an "online predator" or that he was a pedophile in active search of a child victim.  Further, the criminality of his conduct appears to lie primarily in his relationship with his daughter, a matter which state law punishes as sexual battery; the texts and letter, sent well after the sexual relationship was established, were not means to the end of finding a sexual partner, but were apparently incidental to the continuation of the relationship.  If the relationship had been a legal one - even if it involved a minor at or above the age of consent - the texts and letter, while perhaps graphic or crude, would probably not (at least in this day and age) be considered shocking.  It is the father-daughter aspect of the case which makes it stand out.

However, even though there is little evidence that Congress was concerned about criminalizing incestuous relationships which involve, in some fashion, the use of text messages or letters, the Court must divine Congress' intent not from remarks in legislative reports but from the words Congress chose; the latter received the necessary votes to become law, while the former did not.  It is the "rare case[] [where] the literal interpretation

of a statute will produce a result demonstrably at odds with the intentions of its drafters" so that the courts must consider the drafters' intentions, rather than the words of the statute, to be controlling. *Griffin v. Oceanic Contractors*, 458 U.S. 564, 571 (1982). That result is usually reserved for cases where the statutory language is clear but the result of applying the statute, as written, would "lead to internal inconsistencies, an absurd result, or an interpretation inconsistent with the intent of Congress." *Vergos v. Gregg's Enterprises, Inc.*, 159 F.3d 989, 990 (6th Cir. 1998). This is not that rare case. Punishing Mr. Spencer for the acts he committed, should a jury find, based on sufficient evidence, that those acts were more than mere solicitation, may not have been Congress' primary concern when it passed §2422(b), but it would not contradict or contravene Congress' intent to punish adults who try to influence minors to commit unlawful sexual acts.

IV.

For all of these reasons, the Court finds that the United States has met its burden, at the preliminary hearing stage, of demonstrating probable cause to believe that Mr. Spencer violated 18 U.S.C. §2422(b). The case shall proceed accordingly.

/s/ Terence P. Kemp
United States Magistrate Judge